**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:25-cv-04023-RMR-NRN

NESLY PIERRE, LOUINE JEAN-LOUIS, CARLOS SAINT AUBIN, and MAGDALA SANTUS, on their own behalf and on behalf of all others similarly situated,

Plaintiffs,

v.

JBS USA FOOD COMPANY, and SWIFT BEEF COMPANY,

Defendants.

---

**DEFENDANTS' OBJECTIONS TO MAGISTRATE JUDGE RECOMMENDATION**

---

Defendants respectfully submit the following objections to the Recommendation of United States Magistrate Judge Reid Neureiter (ECF No. 66, "Recommendation") recommending denial of Defendants' Motion to Dismiss (ECF No. 39, "Motion").[1]

## I. Plaintiffs' fourth, fifth, and sixth claims for relief, which are based on unreimbursed "business expenses," should be dismissed.

Plaintiffs' fourth, fifth, and sixth claims for relief are based on allegations that Plaintiffs incurred "business expenses" for housing, travel, and so-called "recruitment fees," and that Defendants' failure to reimburse those "business expenses" resulted in

[1] A party is entitled to de novo review of those portions of a recommendation to which a specific objection is made. *See* Fed. R. Civ. P. 72(b)(2), (3). In responding to Defendants' Objections, Plaintiffs are limited to arguments raised in their Response in Opposition to the Motion to Dismiss (ECF No. 49, "Response"). *Feldman v. Denver Pub. Schs.,* 2024 WL 4308189, *5 (D. Colo. Sept. 26, 2024) (plaintiffs waived argument not made in response to the motion to dismiss, as "[i]ssues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

violations of Colorado's Wage Claim Act, Minimum Wage Act, and civil theft statute. ECF. No. 31 ("FAC") ¶¶ 80-81, 207-08, 217, 225. Defendants moved to dismiss each of these claims because, under the facts alleged, no legal authority supports Plaintiffs' contention that the alleged expenses were reimbursable "business expenses." Mot. at 22-29; Reply in Support of Mot. (ECF No. 54, "Reply") at 17-18, 19 n.12. The Recommendation, however, fails to address Defendants' arguments concerning travel costs and "recruitment fees,"[2] and incorrectly holds that Plaintiffs' alleged housing costs were reimbursable "business expenses." Defendants, therefore, object to the Recommendation that dismissal of Plaintiffs' fourth, fifth, and sixth claims be denied.

First, with respect to housing costs, Plaintiffs allege that rent and costs they paid for housing allegedly offered by Defendants must be reimbursed by Defendants because, even if other housing was technically available within commuting distance of the Greeley plant, Plaintiffs had no "viable alternative" to employer-provided housing due to their personal circumstances and limited resources. Resp. at 22; FAC ¶ 113. The Magistrate accepted Plaintiffs' theory, finding that housing costs were "primarily for the benefit" of Defendants because, "given the circumstances of the arriving Haitian immigrant workers (i.e. limited English-language skills, lack of financial resources, lack of transportation, etc.), working for Defendants would have been impossible without employer-provided housing." ECF No. 66 at 33. However, whether housing costs are "business expenses" that must be paid by an employer is determined by ***the nature of the job***, specifically whether the need for housing is a feature of the work due to its remote or distant location, ***not an employee's individual financial circumstances, language ability, or resources***. *See, e.g.,* Reply at 18.

[2] Defendants object to the characterization of these alleged fees as "recruitment fees." However, for convenience only, Defendants refer to these costs as "recruitment fees."

The Colorado Division of Labor Standards and Statistics' Interpretive Notice and Formal Opinion #16 ("INFO #16") identifies "business expenses" that must be paid by an employer to include, generally, items "primarily for employer benefit" and "items the employer requires." *See* INFO #16, available at https://cdle.colorado.gov/dlss/labor-laws-rules-resources/labor-law-guidance-education, at 2. In this case, Plaintiffs do not allege Defendants required them to accept housing allegedly offered, and although Plaintiffs allege housing costs "were primarily for the benefit of" Defendants because Defendants "obtained a labor pool to help its business profit," *see, e.g.*, FAC ¶ 81, courts are not bound to accept as true a conclusory allegation or "a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Moreover, with respect to employer-provided housing, INFO #16 identifies the conditions that render housing primarily for an employer's benefit, and the employer's benefit in obtaining a labor pool is not a factor. Instead, INFO #16 states:

> [H]ousing is primarily for employee benefit only if employees may freely choose whether to accept it, and acceptance is not a condition of employment or necessary ***to do the job*** (for example, if the job is at a location the employee could not realistically commute to, like a resort that is not commuting distance from non-employer housing, or a distant customer worksite where the employer assigns the employee to work) . . . .

*Id*. at 3 (emphasis added). INFO #16 goes on to state (albeit in the context of foreign worker visa programs) that costs which arise as ordinary living expenses are not primarily for an employer's benefit and, thus, are not reimbursable. *Id*. at 5.

All employees at the Greeley facility incur ordinary housing and living expenses, but Plaintiffs allege Defendants were required to pay their particular costs for "employer-provided" housing because their limited resources and English-language skills prevented them from obtaining housing on their own. FAC ¶¶ 113, 233. Nothing in INFO #16 supports Plaintiff's argument that their ***personal circumstances*** render housing costs

"business expenses," and neither Plaintiffs nor the Magistrate have cited any legal authority supporting such an argument.

The reason for such an absence of authority is plain: if the law were as Plaintiffs suggest, an employee who could obtain housing on their own but nevertheless accepted an employer's offer to rent employer-provided housing would have no claim under Colorado law. But an employee who lacked the financial means, resources, or language skills to secure housing on their own and, instead, accepted the employer's housing offer could subsequently bring a claim under Colorado law alleging the employer was required to pay the employee's housing expenses. Such a rule would effectively require employers to subsidize the living expenses of employees with limited means or resources – a result untethered from any statutory text and unsupported by INFO #16.

Plaintiffs, in fact, have elsewhere recognized that personal circumstances are irrelevant to whether costs are business expenses. In Plaintiffs' Response in Opposition to Defendants' Motion to Strike, ECF No. 48, Plaintiffs acknowledge that personal circumstances are ***not*** relevant to determining what constitutes a "business expense":

> [W]hether a particular deduction constitutes a business expense ***will not vary from person to person***. For example, who a "recruitment fee" primarily benefits or what it is meant to compensate Defendants for will not vary from person to person. The nature of the fee does not change based on who it is levied upon.

*Id*. at 15–16 (emphasis added). Plaintiffs' assertion that housing costs were business expenses due to Plaintiffs' individual circumstances contradicts their own admission that "a business expense will not vary from person to person."

Thus, as explained in INFO #16, whether Plaintiffs' housing costs were business expenses depends on the nature of the job, such as "if the job [was] at a location the employee could not realistically commute to" or a "distant customer worksite." INFO # 16 at 3. Their own personal circumstances do not convert housing costs – generally a

"normal living expense" – into a reimbursable business expense. *See, e.g., Arriaga v. Fla. Pac. Farms,* 305 F.3d 1228, 1243 (11th Cir. 2002) (when determining whether costs are primarily for the benefit of the employer, "the line is drawn based on whether the employment-related cost is a personal expense that would arise as a normal living expense."). As such, Plaintiffs' claims based on unreimbursed housing expenses only survive if Plaintiffs plausibly allege the nature of the work itself made employer-provided housing necessary. Plaintiffs fail to do so.

Specifically, although Plaintiffs attempt to squeeze their claims into INFO #16's remote worksite examples by alleging "there was no viable alternative non-employer housing within commuting distance of JBS," FAC ¶ 113, courts do not accept as true a conclusory allegation or "a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678. Moreover, the allegations in the Complaint are not plausible. *See* Mot. at 23-24; *Naranjo v. Victor*, 625 F. Supp. 3d 1140, 1145-46 (D. Colo. 2022) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face . . . . [A complaint does not] suffice if it tenders naked assertions devoid of further factual enhancement.") (citation modified).

Evaluating the plausibility of a claim "requir[es] the reviewing court to draw on its experience and common sense," *Iqbal,* 556 U.S. at 663–64, and, in addition, a court may take judicial notice of facts not subject to reasonable dispute, *Mbaku v. Carrington Mortg. Servs., LLC*, 735 F. App'x 533, 535–36 (10th Cir. 2018); Fed. R. Evid. 201(b). An allegation that no viable housing existed within commuting distance of the Greeley facility or "that the housing options in Greeley were unable to accommodate the sudden influx of hundreds of workers," Resp. at 27, is implausible given that the Greeley facility is located within a metropolitan area accommodating hundreds of thousands of people, and where government studies show good rental housing availability. Mot. at 23-24.

Moreover, the Complaint itself defeats the plausibility of Plaintiffs' "no available housing" allegations. Only Plaintiffs Saint Aubin and Santus contend they paid for housing allegedly provided by Defendants. FAC ¶¶ 102–07. Plaintiffs Pierre and Jean-Louis merely allege they stayed for two weeks at the Rainbow Motel (at no cost), *see id.* ¶¶ 99–100, and do not otherwise allege they used "employer-provided" housing. The reasonable inference – which Plaintiffs concede in their Response, ECF No. 49 at 24 – is that like nearly all other employees of Defendants, they located their own housing within commuting distance of the Greeley facility, whether it be rental apartments, homes, or short-term housing options such as hotels or motels. It is clearly implausible for Plaintiffs to allege that alternatives to employer-provided housing were unavailable.

As for travel expenses, the Magistrate's Recommendation never addressed the issues raised by Defendants. ECF No. 66 at 31-35. Plaintiffs allege that airfare to move to Colorado from their home states of Oklahoma, Indiana, Maryland, and Massachusetts are "business expenses" that must be reimbursed by Defendants. FAC ¶¶ 67-70, 76-79; Resp. at 26-27.[3] Defendants' Motion argued that Plaintiffs have failed to allege any facts or cite any authority to show such costs are "business expenses" for purposes of Colorado wage law, and in fact, there is no legal basis for asserting these costs were "business-related expenses" primarily for Defendants' benefit. Mot. at 25; Reply at 19. The only authority cited by Plaintiffs has been *Arriaga,* 305 F.3d at 1242, which only addresses travel ***from foreign countries*** by workers ***in foreign-worker visa programs***. *Id*. Unique legal authority and factual circumstances apply to those visa programs and, thus, *Arriaga*'s treatment of travel expenses under such programs is inapplicable here. *Id.*

[3] It is unclear whether Plaintiffs seek to recover for alleged travel costs under their fourth claim for relief, but Plaintiffs' alleged travel costs are at issue with respect to Plaintiffs' fifth and sixth claims for relief. *See* Resp. at 26-28.

(noting travel to an employer's locale is an inevitable consequence of the employer's choice to participate in a foreign worker visa program that requires nonimmigrant aliens to travel to the United States) and *id*. at 1232 n.2 (noting such workers can, by law, only travel to the employer's local for the purpose of working for the designated employer and must leave the country when their employment – limited to one year – ends).

There is, in short, no factual or legal basis for holding that travel within the United States to begin employment at a new location, by individuals authorized to work in the United States, is a "business expense" that must be paid or reimbursed by employers Plaintiffs are no different from any other person authorized to work in the United States who chooses to move for job opportunity; such persons benefit from the move and their new job at least as much as the employer, and there is no authority for holding that, in these circumstances, Plaintiffs' travel to Colorado is a business expense the Defendants must pay.

With respect to "recruitment fees," Plaintiffs only argue that recruitment fees are a reimbursable business expense because the fees were a "condition of employment." Resp. at 22, Reply at 17-18. ***But Plaintiffs do not—and cannot in good faith—allege this in the Complaint****.* *See* FAC. Instead, Plaintiffs allege that they were told that if they paid the recruitment fee, Plaintiffs would (1) be hired at JBS, (2) given a ride from the airport to a place to live, and (3) provided temporary housing. FAC ¶ 73. Plaintiffs fail to allege, and it cannot be inferred, that they were *required* to pay the fee to be hired by Defendants, or that Plaintiffs could not obtain employment in an alternative way (such as applying directly). In other words, although Plaintiffs allege paying a recruitment fee was one method for obtaining employment, they fail to allege it was a necessary condition. In fact, Plaintiffs' allegations support that the fee was optional. Reply at 17-18. The Recommendation fails to undertake any analysis regarding this issue. *See* ECF No. 66.

Accordingly, for the reasons stated above and in Defendants' Motion and Reply, Plaintiffs' fourth, fifth, and sixth causes of action fail to state a claim for relief and should be dismissed.

**II. Plaintiffs' claims under C.R.S. § 8-2-104 are preempted by federal law.**

Defendants also moved to dismiss Plaintiffs' second claims under C.R.S. § 8-2-104 because, among other things, provisions within § 8-2-104 regarding lockouts and strikes are (i) preempted by federal law and (ii) not severable from the remainder of the statute. Mot. at 10-13; Reply at 10-11. In recommending Defendants' Motion be denied, the Magistrate merely held § 8-2-104 is not preempted because the statute *also* applies outside the strike and lockout context. ECF No. 66 at 38. As such, the Magistrate failed to analyze whether the non-preempted portions of § 8-2-104 can be severed from the preempted provisions.[4]

The Magistrate's failure to determine whether the non-preempted portions of § 8-2-104 can be severed from the preempted provisions was in error. As explained in Defendants' Motion, even assuming § 8-2-104 is not limited to cases involving recruitment of strikebreakers, such provisions of the statute are preempted, and because the preempted provisions of § 8-2-104 are not severable from the remainder of the statute, § 8-2-104 is preempted in its entirety. Mot. at 10-13; Reply at 10-11.

As explained in Defendants' Motion, under *Lodge 76, Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO v. Wisconsin Employment Relations Comm'n*, 427 U.S. 132 (1976) ("Machinists"), the National Labor Relations Act preempts § 8-2-104's

[4] The Recommendation states, "Defendants cite no Colorado or Tenth Circuit case suggesting that this statute (or any similar statute) is invalid on federal preemption grounds." ECF No. 66 at 38. However, this appears to be a novel issue of law in Colorado. Thus, although Defendants do not cite case law holding § 8-2-104 preempted, so too Plaintiffs fail to cite cases finding § 8-2-104 is *not* preempted.

prohibition on any misrepresentation about "the existence or nonexistence of a [pending] strike or lockout," and declaration that a "failure to state in any advertisement, proposal, or contract for the employment that there is a strike, lockout, or other labor trouble" violates the statute. Mot. at 10-13. Although Plaintiffs' claims do not implicate the preempted provisions of § 8-2-104, their claims fail because the preempted portions of § 8-2-104 are not severable from the provisions at issue here. *See Loc. 514 Transp. Workers Union of Am. v. Keating*, 66 F. App'x 768, 772–74 (10th Cir. 2003) (holding litigant may argue entire law is preempted where preempted portions cannot be severed from non-preempted portions, even where preempted portions are inapplicable to the litigant). If "the General Assembly would have passed th[e] Act with [the preempted portions] eliminated," then it may be severed. *Riss & Co. v. McCaslin*, 355 P.2d 304, 305–06 (Colo. 1960) (quoting *City & Cnty. of Denver v. Lynch*, 18 P.2d 907, 910 (1932)). But, "if the invalid portion of an act was apparently an inducement to the passage of the valid [portion], the statute is not severable." *Id.* "Nor can an essential part of an act which colors the whole be stricken as invalid and the remainder sustained." *Id.* For instance in 1932, the Supreme Court of Colorado held a law not severable because it appeared "that, in all probability, the invalid portion of the act was an inducement to the passage of the valid" portions and, thus, "the unconstitutional portion of this act carries the whole down with it." *Lynch*, 18 P.2d at 910.

In Plaintiffs' Opposition to Defendants' Motion, Plaintiffs ***do not contest*** that § 8-2-104's lockout and strike provisions are preempted under federal law. *See* Resp. at 13–14. Rather, Plaintiffs rely on Colorado's general severability statute, C.R.S. § 2-4-204, to argue that the non-preempted portions of the statute are severable from the preempted portions of the statute. *Id.* But the general severability statute was enacted more than fifty years after § 8-2-104 was passed, and statutes are presumed not to be retroactive in

operation. *See* C.R.S. § 2-4-202; Colo. Const. art. II, § 11 (1876) (prohibiting passage of laws with retroactive operation); Reply at 10-11. In Colorado, severability is a matter of "legislative intent," *Riss*, 355 P.2d at 305–06, and intent cannot be altered by a different legislature more than fifty years later. Reply at 10-11.

Indeed, as explained in Defendants' Motion, the Colorado General Assembly did *not* intend for § 8-2-104 to be severable. Although the Colorado Assembly included a severability clause in other acts passed during the 1911 session, § 8-2-104 and the full 1911 bill do *not* include a severability clause. *See, e.g.*, *In re Opinion of Justs.*, 55 Colo. 17, 22, 123 P. 660, 662 (1912) (holding 1911 act creating Colorado Tax Commission was severable given legislature's inclusion of severability clause in the act). As such, the omission is presumptively intentional. As explained by the United States Supreme Court in 1936, "In the absence of [a severability] provision, the presumption is that the Legislature intends an act to be effective as an entirety—that is to say, the rule is against the mutilation of a statute; and if any provision be unconstitutional, the presumption is that the remaining provisions fall with it." *Carter v. Carter Coal Co.*, 298 U.S. 238, 312 (1936). The General Assembly's choice not to include a severability clause indicates its intent that any unenforceable portions of the statute not be severable.

Additionally, given the General Assembly's documented concern in passing the law with the recruitment and importation of strikebreakers, the preempted portions of § 8-2-104 regarding strikes and lockouts were an "essential part" of the law which "color[] the whole." *Riss*, 355 P.2d at 305–06. As explained in Defendants' Motion, the circumstances surrounding the introduction, debate, and passage of the statute, as well as the marginal notation in the enacted Session Law, evince that in passing § 8-2-104, the Legislature was concerned with the recruitment and importation of strikebreakers. Motion at 8-9' Movant's Appx., ECF No. 39-1, at 3-77. In analyzing a nearly identical law, the Tenth

Circuit has explained: "The statute on *its face focuses* on the practice of recruiting strike breakers through false inducements." *Matthews v. LaBarge, Inc.*, 407 F. App'x 277, 281 (10th Cir. 2011) (emphasis added). Given the Legislature's clear focus on recruiting strike breakers, there is no evidence it would have passed the statute excluding the portions preempted by *Machinists.* Plaintiffs' claims under § 8-2-104 fail because the preempted portions of § 8-2-104 are not severable from the provisions at issue in this case.

## III. CONCLUSION

For all the foregoing reasons, Defendants respectfully request this Court sustain Defendants' Objection to the Magistrate's Recommendation.

Dated: June 26, 2026

*s/ Matthew Morrison*
Matthew Morrison
Amy Knapp
Stephanie Hiquiana
Spencer Fane, LLP
1700 Lincoln Street, Suite 2000
Denver, CO 80203
(303) 839-3800
mmorrison@spencerfane.com
aknapp@spencerfane.com
shiquiana@spencerfane.com

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 26, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will notify all counsel of record.

*s/ Taylor Wooten*
Legal Assistant