IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:25-cv-04023-RMR-NRN

NESLY PIERRE, LOUINE JEAN-LOUIS, CARLOS SAINT AUBIN, and MAGDALA SANTUS, on their own behalf and on behalf of all others similarly situated,

Plaintiffs,

v.

JBS USA FOOD COMPANY, and SWIFT BEEF COMPANY,

Defendants.

**PLAINTIFFS' OPPOSITION IN RESPONSE TO DEFENDANTS' OBJECTIONS TO MAGISTRATE JUDGE RECOMMENDATION**

---

## I. INTRODUCTION

Plaintiffs respectfully submit this response in opposition to Defendants' Objections to Magistrate Judge Recommendation, ECF No. 71 ("Obj."), filed on June 26, 2026. Plaintiffs work or worked for Defendants' meat processing plant in Greeley, Colorado. They allege that Defendants targeted them for recruitment because they are Haitian. They allege Defendants lured them to Colorado under false pretenses, with promises about the job that Defendants knew were untrue. They allege that Defendants discriminated against them in a variety of ways and that Defendants charged them unlawful fees for employer-provided housing, travel to Colorado, and recruitment. And they make these allegations on behalf of a proposed class of more than 1,300 Haitian workers that they allege Defendants recruited to work at the Greeley plant.

The First Amended Complaint, ECF No. 31 ("FAC"), sufficiently alleges Plaintiffs'

claims against both Defendants under Title VII, Section 1981, Colorado's Obtaining Workmen by Misrepresentation Unlawful statute, the Colorado Wage Claim Act, and the Colorado Minimum Wage Act, as well as for unjust enrichment and civil theft. *See* Report and Recommendation, ECF No. 66 ("R&R") (denying Defendants' motion to dismiss in its entirety). Defendants raise two objections to the R&R: (1) whether charging Plaintiffs certain fees can be the basis of the two wage claims and civil theft; and (2) whether federal law preempts Colorado's Obtaining Workmen by Misrepresentation Unlawful statute. *See* Obj. The Court should overrule these objections and adopt the R&R.

First, Defendants charged Plaintiffs for employer-provided housing and recruitment fees and required Plaintiffs to incur travel expenses. FAC ¶¶ 67-81, 91-107. These fees are business expenses that Defendants should not have collected from Plaintiffs or for which Defendants should have reimbursed Plaintiffs. *Id.* ¶¶ 80-81, 113. This is because the fees and expenses were primarily for Defendants' benefit. *Id.* ¶¶ 80-81, 113. Defendants needed workers and targeted Haitians for recruitment because Defendants knew they would be desperate for a job. *Id.* ¶¶ 58-65. One of the ways Defendants obtained that workforce was by promising housing and a job as long as the worker came to Greeley and paid fees for recruitment and housing. *Id.* ¶¶ 66-130. Plaintiffs allege that obtaining the job in Greeley without paying these fees and incurring expenses would not be possible for these workers. *Id.* ¶¶ 71-72, 80-81, 113. Plaintiffs also allege how Defendants themselves became desperate for workers, set their sights on Haitians, and lured them to Colorado to fill Defendants' labor needs. *Id.* ¶¶ 50-62. These allegations sufficiently state that the fees were primarily for Defendants' benefit.

*See infra* Pt. II.A. And while Defendants contest those allegations, Obj. at 2-7, the parties' dispute over facts can only be resolved after discovery, not on the pleadings.

Second, Colorado Statute Section 8-2-104 makes it unlawful to induce, influence, or persuade an employee to change from one place of employment to another by means of false or deceptive representations. Contrary to Defendants' assertions, the statute is not limited to misrepresentations about labor strikes or lockouts, as supported by the numerous cases in this District that have applied Section 8-2-104 outside of the context of labor strikes or lockouts. As such, *Machinists'* preemption does not apply. Moreover, to the extent the statute must be severable for Plaintiffs' claims to survive, it is. Under the plain language and principles of statutory construction, there is no sound argument that the statute would fall apart if the language on strikes and lockouts were to be severed. The statute is not preempted. *See infra* Pt. II.B.

For these reasons, the Court should overrule the objections and adopt the R&R.

## II. ARGUMENT

De novo review of the R&R applies. Fed. R. Civ. P. 72(b)(3). A complaint must contain "enough facts to state a claim to relief that is plausible on its face" to survive a motion to dismiss. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007). Well-pleaded allegations are accepted as true and viewed in the light most favorable to the nonmoving party. *Robbins v. Wilkie*, 300 F.3d 1208, 1210 (10th Cir. 2002). Under these standards, Defendants' motion to dismiss fails.

**A. Plaintiffs have sufficiently stated claims under the Colorado Wage Claim Act (Count IV), Colorado Minimum Wage Act (Count V), and for Civil Theft (Count VI) based on unreimbursed business-related expenses.**

The Colorado Wage Claim Act ("CWCA") prohibits employers from making "a deduction from the wages or compensation of an employee" except under limited circumstances. C.R.S. § 8-4-105(1). Similarly, the Colorado Minimum Wage Act requires that all employees be paid the applicable state or local minimum wage. C.R.S. § 8-6-106; COMPS Order # 39, 7 CCR 1103-1, R. 3.1. When an employer shifts business expenses to an employee, and the costs of those expenses bring the employee's wages below the hourly minimum, that is a violation of the CMWA. *See Koral v. Inflated Dough, Inc.*, 2014 WL 4904400, at *4 (D. Colo. Sept. 29, 2014). And failure to pay minimum wage can constitute civil theft pursuant to C.R.S. § 18-4-405. Importantly, Colorado's Division of Labor Standards and Statics has explained:

> Employees can't be required to pay, without reimbursement, for items primarily for employer benefit or convenience, because 'there is no legal difference between deducting a cost directly from wages and shifting a cost, which they could not deduct, for the employee to bear.'

Interp. Notice & Formal Op. ("INFO") #16 at 3 (citing *Arriaga v. Fla. Pac. Farms*, 305 F.3d 1228, 1236 (11th Cir. 2002)).[1] Even if an employer authorizes an employee to make an expenditure without promise of reimbursement, an employer still cannot require employees to pay costs that primarily benefit the employer. *Id.* at 4; *see e.g., Martins v. Auberge Resorts Aspen, Inc.*, No. 2025-cv-30152 at 7-9 (Pitkin Cnty. Dist. Ct., Colo. March 6, 2026) (denying motion to dismiss where employees alleged employer failed to

---

[1] INFOs are available at: https://cdle.colorado.gov/dlss/labor-laws-rules-resources/labor-law-guidance-education (accessed July 9, 2026).

reimburse them for visa and travel expenses); *Ruhrkraut v. Commonspirit Mountain Region*, No. 25-cv-30327 at 6-7 (Denver Cnty. Dist. Ct., Colo. May 23, 2025).[2]

Here, Plaintiffs allege that Defendants violated the CWCA by charging Plaintiffs and proposed class members recruitment fees, employer-provided housing costs, and travel expenses. FAC ¶ 207. Plaintiffs allege that Defendants' imposition of these fees caused Plaintiffs' net wages to fall below the minimum wage and also constitutes civil theft. *Id.* ¶¶ 67-81, 91-107, 227. Defendants, on the other hand, argue that (1) housing and travel fees were not business expenses that were primarily for Defendants' benefit; (2) housing was not necessary to the job, the R&R improperly considered Plaintiffs' personal circumstances, and other housing options were available; and (3) recruitment fees were not a condition of employment. Defendants are wrong on all three points.

**1. Plaintiffs have sufficiently alleged that the fees at issue were business expenses that primarily benefited Defendants.**

Plaintiffs have alleged precisely how and why the fees and expenses at issue primarily benefited Defendants. Plaintiffs allege, in detail, how Defendants came to need workers at the Greeley plant in the fall of 2023. FAC ¶¶ 39-50 (discussing more than a decade of Defendants' workforce history leading up to Fall 2023 when "***JBS needed new workers***. It found some: recently arrived Haitians[.]") (emphasis added). Plaintiffs allege that Defendants decided that Haitian workers would be ideal and describe Defendants' targeted recruitment of Haitian workers from all over the country. *Id.* ¶¶ 50-61, 113 (discussing how Haitian workers were an "ideal replacement for the Muslim Somalis who

[2] *Martins* and *Ruhrkraut* are filed in this case at ECF No. 49-1.

required time to pray, or the workers who felt empowered by the bargaining agreement" and how one supervisor stated "JBS was getting new workers that would replace the Somalis because 'they don't pray and they don't need to go to the bathroom.'"). Indeed, Plaintiffs allege, "JBS intended to recruit the Haitians ***to fill its labor needs***, knowing that, as newly arrived immigrants to the United States, they would be desperate for work. ***This would enable JBS to fill open job positions, replace workers it no longer wanted, and staff the overnight shift***." *Id.* ¶ 52 (emphases added). And Plaintiffs allege:

> JBS's message was clear: get the Haitians to Greeley ***to fill JBS's labor needs***. Where the Haitians would live, how they would be treated or "provided for," even what they needed to know about the job they were being guaranteed, was ***secondary to getting the Haitians to JBS to work***.
>
> Remy [a person who was recruiting workers] complied and began responding to the messages, telling those inquiring that the jobs were theirs if they came to Greeley, Colorado. ***All they had to do was come, and JBS would take care of them: give them good, high-paying jobs, provide them with "really nice" housing, and ensure they could eat, commute and obtain necessities while they waited to start their jobs***. Plaintiffs and the putative Class Members were among those who heeded this call.

*Id.* ¶ 64-65 (emphases added).

What is more, employer-provided housing "is primarily for employee benefit only if employees may freely choose whether to accept it, and acceptance is not a condition of employment or **necessary to do the job** (for example, if the job is at a location the employee could not realistically commute to, like a resort that is not commuting distance from non-employer housing[.])." *See* INFO #16 at 2-3 (emphasis in original). In contrast, where employer-provided housing is at a location in which the employee could not realistically commute to, the housing is primarily for the employer's benefit. *See id.* Here, Plaintiffs allege that JBS intentionally recruited Haitian workers from all over the country,

knowing that they "would not have their own transportation, either to find alternative housing or to commute from it if they did," and that because the Haitian workers were new to the country with few resources, that "employer provided housing was … necessary to do the job as there was no viable alternative non-employer housing." FAC ¶¶ 58, 73, 113. Plaintiffs further allege that working for Defendants would have been impossible without employer-provided housing given the workers' limited ability to speak English, lack of financial resources and transportation, and inability to find alternative housing amid the sudden arrival of Haitian workers in Greeley. *Id.* ¶¶ 58, 73, 113. Employer-provided housing was a fundamental and necessary part of filling JBS's labor needs. *Id.* ¶ 113.

Similarly, workers' travel expenses are primarily for the employer's benefit where the costs are "necessary to" and "an incident of" the employer, such that the expenses "wouldn't otherwise arise as ordinary employee living expenses." *See* INFO #16 at 5. That is what Plaintiffs allege here. Not only do they allege that Defendants sought to recruit Haitian workers from all over the country, but Plaintiffs also allege that they would not have traveled to Colorado without the promise of a job with Defendants. FAC ¶¶ 50, 71-72.[3] These allegations are sufficient to allege that the travel expenses are primarily for Defendants' benefit. *See, e.g.*, *Martins,* No. 2025-cv-30152 at 7-9. Defendants' claim that *Arriaga v. Florida Pacific Farms* is distinguishable is wrong. 305 F.3d at 1242-43. Rather, in *Arriaga*, the court found that transportation costs were primarily for the benefit of the

[3] Defendants do not dispute in their objections that Plaintiffs sufficiently allege the recruitment fees primarily benefitted Defendants. *See generally* Obj; *see also* FAC ¶¶ 50-52, 64, 73, 81.

employer because they were an incident of and necessary to the employment where the employer was "unable to employ local workers who would not require such transportation costs[.]" *Id.* at 1239-44. Regardless, Plaintiffs explicitly allege that Defendants sought workers from outside of Greeley and outside of Colorado, making the facts of *Arriaga* more similar than Defendants contend.

Accordingly, Magistrate Judge Neureiter logically held that Plaintiffs plausibly alleged the fees were primarily for Defendants' benefit "given the circumstances of the arriving Haitian immigrant workers[.]" R&R at 33. This Court should do the same.

**2. Defendants' remaining arguments about housing fees fail.**

Despite the detailed allegations summarized above, Defendants still argue that housing was not necessary to the job, the R&R improperly considered Plaintiffs' personal circumstances, and other housing options were available. Each of these arguments are factual disputes that cannot be decided on the pleadings. *See Robbins*, 300 F.3d at 1210.

For example, Defendants dispute that the employer-provided housing was necessary to the job or a requirement imposed by Defendants. *See* Obj. at 3. Plaintiffs allege the opposite. FAC ¶¶ 58, 73, 113. Defendants allege that Plaintiffs' argument requires reliance on the personal circumstances of the Plaintiffs. *See* Obj. at 2-3. First, there is nothing wrong with this. *See* INFO #16 at 2-3 (listing as an example where "the job is at a location ***the employee*** could not realistically commute to, like a resort that is not commuting distance from non-employer housing[.]") (emphasis added). Second, Defendants' argument requires the Court to reject Plaintiffs' allegations that employer-provided housing was a requirement of or otherwise necessary to the job because of

***Defendants'*** choice to intentionally recruit workers from all over the country. FAC ¶¶ 50-64, 73, 113. The Court cannot do so at this stage of the case. *See McNellis v. Douglas Cnty. Sch. Dist.,* 116 F.4th 1122, 1130 (10th Cir. 2024) ("In evaluating a motion to dismiss, the court must take as true all well-pleaded facts…view all reasonable inferences in favor of the nonmoving party, and liberally construe the pleadings.") (internal quotations and alterations omitted). Relatedly, Defendants argue that because two of the four plaintiffs only stayed in employer-provided housing for two weeks, employer-provided housing was not necessary. *See* Obj. at 6. However, the necessary implication and reasonable inference from these allegations is that Plaintiffs initially needed to rely on employer-provided housing to work for Defendants when they arrived in Colorado. FAC ¶¶ 98-100.

Defendants' argument that other housing options were available is also a fact question. As Magistrate Judge Neureiter explained after holding that Defendants' request for judicial notice of housing and population data "violates the principle that, with limited exceptions, in deciding a Rule 12(b)(6) motion, the Court should focus only on the allegations in the pleading":

> [T]he Court will not take judicial notice of population or other data that does not end the dispute but, at best, supports an argument that it would have been *possible* for Plaintiffs to find alternative housing within commuting distance of the JBS Greeley plant. This is a factual question that cannot and should not be decided on a motion to dismiss[.]

R&R at 33-34 (emphasis in original). This is the correct result. *See, e.g.*, *Cuervo v. Sorenson*, 112 F.4th 1307, 1312 (10th Cir. 2024) ("Generally, a court may consider only the contents of a complaint when ruling on a motion to dismiss.").

**3. Plaintiffs have sufficiently alleged that recruitment fees were a condition of employment.**

Defendants argue that Plaintiffs do not allege that recruitment fees were mandatory. *See* Obj. at 7. Not so. Plaintiffs allege that they "were told that ***if*** they paid the recruitment fees, they would be hired at JBS, they would be given a trip from the airport to a place to live, and they would be provided housing for a period of time while they got established in Colorado." FAC ¶ 73 (emphasis added). Plaintiffs sufficiently allege that the recruitment fees were a condition of employment.

**B. Plaintiffs' claim under Colorado Statute Section 8-2-104 (Count II) is not preempted.**

Colorado Statute Section 8-2-104 "makes it unlawful to induce, influence, or persuade an employee to change from one place of employment to another by means of false or deceptive representations." *Snyder v. Beam Tech., Inc.*, 2021 WL 4947295, at *16 (D. Colo. Aug. 16, 2021) (citation omitted). Here, Plaintiffs allege Defendants, through their agents' false and deceptive representations about working conditions, brought Plaintiffs and proposed class members to Colorado, thereby obtaining their labor through unlawful luring. FAC ¶¶ 191-92. For example, Plaintiffs allege Defendants, through their agents, made misrepresentations or omissions about the kind and character of work to be done, sanitary or other conditions, and compensation. *See id.* ¶¶ 131-46 (discussing working conditions that exposed Plaintiffs to greater risk and injuries), *id.* ¶¶ 99-107, 117-20 (discussing fees that reduced wages below the minimum wage and were primarily for Defendants' benefit), *id.* ¶¶ 147-52 (discussing lack of bathroom breaks and unavoidable urination while working); *id.* ¶¶ 84-91 (discussing cramped and squalid employer-provided

housing that was necessary to the job). Plaintiffs allege that Defendants' agents knew they were charging fees for the employer's benefit, knew that they did not have housing to hold the number of people they were recruiting, and knew what working in the plant was like, including the dangers or the job and importance of safety training, among other things. FAC ¶¶ 67-81.

Defendants argue Plaintiffs' claims are preempted under *Machinists & Aerospace Workers, AFL-CIO v. Wisconsin Employment Relations Commission*, 427 U.S. 132 (1976) ("*Machinists*"). According to Defendants, (1) the statute only applies in the context of labor strikes or lockouts; and (2) the provision of the statute dealing with strikes and lockouts is not severable. Obj. at 8-10. Both arguments fail.

**1. *Machinists* preemption does not bar Plaintiffs' claim.**

Colorado's statute prohibiting "obtaining workmen through misrepresentations unlawful" states:

> It is unlawful for any person, company, corporation, society, association, or organization of any kind doing business in this state, by itself or its agents or attorneys, to induce, influence, persuade, or engage workmen to change from one place of employment to another in this state, or to bring workmen of any class or calling into this state to work in any of the departments of labor in this state, through or by means of false or deceptive representations, false advertising, or false pretenses concerning the kind and character of the work to be done, ***or*** amount and character of the compensation to be paid for such work, ***or*** the sanitary or other conditions of the employment, ***or*** as to the existence or nonexistence of a strike or lockout pending between employer and employees, ***or*** failure to state in any advertisement, proposal, or contract for the employment that there is a strike, lockout, or other labor trouble at the place of the proposed employment, when in fact such strike, lockout, or other labor trouble then actually exists at such place, and it is deemed false advertisement and misrepresentation for the purposes of sections 8-2-104 to 8-2-107.

Colo. Stat. 8-2-104 (emphases added). So misrepresentations or omissions regarding strikes or lockouts are just two types of conduct prohibited under the law. *See* R&R at 35 ("While some portions of the statute do refer to labor strikes or unrest, the language of the statute is not so limited.").

Whether the statute is preempted "boils down to this: does the state statute interfere with the workings of the National Labor Relations Act?" *Peabody Galion v. Dollar*, 666 F.2d 1309, 1313 (10th Cir. 1981). "The kind of state law or policy that conflicts with the NLRB's jurisdiction is one which deals with a similar subject and which limits, restricts or interferes with the functioning of the National Labor Relations Act." *Id.*

Here, Defendants offer no explanation of how the statute interferes with the workings of the National Labor Relations Act, despite being the party that bears the burden of proving preemption. *See generally* Obj.; *AbbVie, Inc. v. Weiser*, 811 F. Supp. 3d 1264, 1274 (D. Colo. 2025) ("The party claiming preemption … bears the burden of showing with specificity that Congress intended to preempt state law.") (ellipses in original) (quoting *Day v. SkyWest Airlines*, 45 F.4th 1181, 1184 (10th Cir. 2022)). As Magistrate Judge Neureiter found, "defendants cite no Colorado or Tenth Circuit case suggesting that this statute (or any similar statute) is invalid on federal preemption grounds." R&R at 38. The same holds true now. *See generally* Obj. Indeed, nothing in the plain language of the statute indicates that it would or could prevent the National Labor Relations Board from taking action if the Board so chose. *See* Colo. Stat. 8-2-104.

Defendants try to explain the lack of authority by claiming this is a "novel issue." Obj. at 8 n.4. In truth, however, numerous courts in Colorado have considered the statute

outside of the context of labor strikes and disputes. *See e.g., Roberts v. Conoco, Inc.*, 717 F. Supp. 724, 724 (D. Colo. 1989) ("[Section 8-2-104] makes one liable for inducing a workman to move into Colorado by means of false or deceptive representations concerning the kind and character of the work."); *Nelson v. Gas Rsch. Inst.*, 121 P.3d 340 (Colo. App. 2005); *Pittman v. Larson Distrib. Co.*, 724 P.2d 1379 (Colo. Ct. App. 1986); *Snyder*, 2021 WL 4947295; *Boeser v. Sharp*, 2006 WL 898126 (D. Colo. Mar. 31, 2006); *Pownell v. Credo Petroleum Corp.*, 2011 WL 2580765 (D. Colo. June 29, 2011); *Ashford v. Am. Residential Servs. LLC*, 2006 WL 83067 (D. Colo. Jan. 11, 2006).[4]

Defendants' arguments are especially misplaced because this case has nothing to do with strikes or lockouts and relies on other portions of the statute. *See Peabody Galion*, 666 F.2d at 1316 ("The conduct at issue in this case … is not subject to either protection or prohibition … because it has nothing . . . to do with union organization or collective bargaining."); *see also* R&R at 38 ("[Defendants'] argument relies on the notion that the Colorado statute only applies in the strike or labor lockout context. Here, it is not being applied in the labor lockout or strike context."). Plaintiffs' claims are not preempted.

**2. The statute is severable.**

Defendants next argue that the portions of the statute pertaining to strikes and lockouts are not severable. As a preliminary matter, Defendants' statements about what

[4] *Matthews v. LaBarge, Inc.*, 407 F. App'x 277 (10th Cir. 2011) is inapposite given its facts. *See* R&R at 37-38. Moreover, it does not stand for the proposition that the statutory language only applies in the context of strikes and lockouts. 407 F. App'x 277; *see also Gray v. Venable's Welding & Roustabout, Inc.*, 2014 WL 823431, at *1 (W.D. Okla. Mar. 3, 2014) (rejecting *Matthews* and stating, "the statute by its terms prohibits misrepresentations that do not necessarily relate to labor disputes.").

Plaintiffs may have conceded or what the R&R should have addressed are wrong. Plaintiffs explicitly argued that the NLRA does not preempt Section 8-2-104. Pls.' Opp. Br. at 13, ECF No. 49. And they argued that "***even if*** the portion of Section 8-2-104 pertaining to strikes and lockouts ***were actually*** preempted, it could be severed from the remainder of the section, allowing Plaintiffs' claims to move forward. *Id.* at 13 (emphases added). So, Plaintiffs have not conceded or waived their arguments against preemption.

Regardless, should this Court disagree that the entirety of the statute is not preempted, it can still find the statute severable. "The test is whether the void provision and the valid provision are essentially and inseparably connected and interdependent, one with the other, so that it cannot be presumed that the legislature would have enacted the valid provisions without the void one." *Hejira Corp. v. MacFarlane*, 660 F.2d 1356, 1362 (10th Cir. 1981). Here, the provisions pertaining to strikes and lockouts are not "essentially and inseparably connected and interdependent" to the remainder of the statute. Rather, the statute uses the word "or" four times: It is unlawful to induce a worker to come to this state through false pretense concerning "the kind and character of the work …, ***or*** amount and character of the compensation … , ***or*** the sanitary or other conditions …, ***or*** as to the existence or nonexistence of a strike or lockout …, ***or*** failure to state … that there is a strike, lockout, or other labor trouble[.]" Colo. Stat. 8-2-104 (emphasis added). "Or" is disjunctive. *See People v. Gallegos*, 307 P.3d 1096, 1101 (Colo. 2013). The disjunctive "or" indicates "alternative[s,]" not an inseparably connected list. *Gallegos*, 307 P.3d at 1101. The statute is severable. *See, e.g.*, *People v. Powell*,

716 P.2d 1096, 1101-02 (Colo. 1986); *see also Hejira*, 660 F.2d at 1363 ("Frequently courts have severed invalid sentences or clauses…, rather than entire sections[.]").

Defendants' reliance on marginal notes printed in the session law or nonlegislative sources do not outweigh straightforward interpretation of the statute's plain language. *See, e.g.*, *Singer*, Sutherland Statutory Construction § 48:11 (7th ed. 2025) (citing, *inter alia*, *Mitchell v. Rayl*, 8 Kan. App. 2d 690, 665 P.2d 1117 (1983) and *Hulcher v. Com.*, 39 Va. App. 601, 575 S.E.2d 579 (2003) for the proposition that a newspaper article is not proof of legislative intent). The statute itself "is a relatively simply statute creating an action for statutory fraud when an employer entices a potential employee to move to a state by making misrepresentations." R&R at 38. It does not require that those misrepresentations pertain to strikes or lockouts. *See* Colo. Stat. 8-2-104; *see also Snyder v. Beam Techs., Inc.*, 2023 WL 4136668, at *11 (D. Colo. June 22, 2023) ("The title of Senate Bill 122 indicates that its purpose was to prohibit the procuring of employees generally by false representations[.}"), *aff'd,* 147 F.4th 1246 (10th Cir. 2025).

Plaintiffs' claims under Colo. Stat. 8-2-104 are not preempted and, if necessary, the statute can be severed to allow Plaintiffs' claims to move forward.

## III. CONCLUSION

Plaintiffs respectfully request that the Court overrule Defendants' objections and adopt the R&R, denying Defendants' motion to dismiss in its entirety.

Dated: July 10, 2026

Respectfully submitted,

**NICHOLS KASTER, PLLP**

s/*Joshua R. O'Neill*
Matthew H. Morgan
Anna P. Prakash
Joshua R. O'Neill
4700 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Telephone: (612) 256-3200
Facsimile: (612) 215-6870
morgan@nka.com
aprakash@nka.com
joneill@nka.com

**FARMSTAND**
Amal Bouhabib
Hannah Wolf
712 H St NE Suite 2534
Washington, D.C. 2002
(202) 595-8816
amal@farmstand.org
hannah@farmstand.org

**TOWARDS JUSTICE**
Juno Turner
Toree Lindblad
1580 N Logan Street
Ste 660 PMB 44465
Denver, CO 80203-1994
(720) 441-2236
juno@towardsjustice.org
toree@towardsjustice.org

Attorneys for the Plaintiffs