**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Chief Judge Regina M. Rodriguez**

Civil Action No. 25-cv-04023-RMR-NRN

NESLY PIERRE,
LOUINE JEAN-LOUIS,
CARLOS SAINT AUBIN, and
MAGDALA SANTUS, on their own behalf and on behalf of all others similarly situated,

Plaintiffs,

v.

JBS USA FOOD COMPANY, and
SWIFT BEEF COMPANY,

Defendants.

---

**ORDER**

---

This matter is before the Court on the Recommendation of United States Magistrate Judge N. Reid Neureiter entered on June 12, 2026, ECF No. 66, addressing Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) ("Motion"), ECF No. 39.[1] Magistrate Judge Neureiter recommends that the Defendants' Motion be denied. Defendants timely filed an Objection to the Recommendation, ECF No. 71, and Plaintiffs filed a response to the Objection, ECF No. 72.[2] The Court has reviewed the

[1] Magistrate Judge Neureiter also denied Defendants' Motion to Strike (ECF No. 37) in the same entry. The Court will only address the Recommendation in this Order.

[2] The Court notes that both the Objection and the response to the Objection do not comply with Civ. Practice Standards 10.1(a) and 72.3(c). Although it may, the Court will

Recommendation, the Objection, the record, and the pleadings. In the Recommendation, Magistrate Judge Neureiter provides a thorough summary of the current status of this case, noting its frustrating history. For example, on May 12, 2026, Magistrate Judge Neureiter issued an Order to Show Cause as to why "defense counsel should not be sanctioned for even making the argument *on a motion to dismiss* that Plaintiffs have failed to adequately allege that JBS USA is Plaintiffs' employer." ECF No. 63; ECF No. 66 at 26. In their response, Defendants argue that they "never employed Plaintiffs [or] any of the putative class members" but instead used the "JBS USA" logo as a "branding exercise. *Id.* In the Recommendation, Magistrate Judge Neureiter rejects Defendants' argument that they are not the proper defendants based on such a technicality. *Id.* at 27. The remainder of the Recommendation carries the same sentiment towards Defendants' arguments. Upon de novo review, the Court finds no clear error in Magistrate Judge Neureiter's Recommendation and further concludes that his analysis of Defendants' motion to dismiss, which indeed largely relies on minutiae or technical loopholes, is spot-on. Thus, for the reasons stated below, the Court OVERRULES the Defendants' Objection and ACCEPTS AND ADOPTS the Recommendation.

---

not strike the Objection or response to the Objection and will consider them in their entirety.

## I. BACKGROUND[3]

This class action lawsuit is brought by Plaintiffs on behalf of themselves and other similarly situated individuals against JBS USA Food Company and Swift Beef Company ("Defendants"). Plaintiffs and the putative class members are Black, of Haitian ancestry, and citizens of Haiti. They are employed or were recruited for employment at Defendant's Greeley, Colorado meat processing plant. Plaintiffs claim that Defendants' Greeley meat processing facility ("JBS Greeley") implemented a recruiting effort that intentionally and strategically relied on refugees and other immigrants seeking humanitarian relief to fill its workforce. Plaintiffs allege that, at some point, JBS Greeley began working directly with refugee resettlement agencies and local service organizations to recruit immigrants with work authorization. By 2020, JBS Greeley's meatpacking workforce was estimated to be 80-90% foreign-born. By fall of 2023, JBS Greeley again needed new workers and identified recently arrived Haitians as potential employees.

JBS Greeley's human resources supervisor, Edmond Ebah ("Ebah"), was an established recruiter for JBS Greeley. He met Mackenson Remy ("Remy"), a Haitian resident of Colorado, and told Remy that JBS Greeley had at least 60 openings in slaughtering, butchering and packaging meat. Ebah said to Remy that, if the Haitians came to Greeley, they would have a job at JBS. Plaintiffs allege that Ebah knew Haitian refugees would rely on such a promise that guaranteed them a job with no English requirements and agree to come to Greeley.

[3] The Court incorporates the "Background" section from the Recommendation, ECF No. 66 at 2-13.

Remy created a TikTok video advertising job opportunities at JBS Greeley. The video made several representations about the kind of work at JBS Greeley, the compensation, the conditions of the job, and the guarantee of a job if Haitian immigrants came to Greeley. Plaintiffs allege that JBS Greeley approved the TikTok video and knew the representations made in the video were not accurate. First, they allege the video did not represent how difficult and dangerous the work would be. Second, they allege that no supervisors spoke Haitian Creole or intended to translate training and employment materials into Haitian Creole prior to or after hiring the Haitian workers. Third, they claim that JBS Greeley knew Remy had misrepresented the amount and character of the pay, quality of the housing, the fact that workers would have to pay for the housing, and that the housing was over-crowded and filthy. Finally, Plaintiffs argue that the working conditions were also misrepresented in that JBS Greeley did not mention conditions like extreme heat, repetitive motions, and the use of dangerous chemicals, heavy machinery, and sharp tools. The named Plaintiffs flew to Colorado after hearing about Remy's TikTok video and understood that the job opportunity at JBS Greeley would not require knowing English and the provided housing would be safe, sanitary, and sufficiently furnished and spaced for the number of residents.

Remy charged a recruitment fee to all Plaintiffs and putative class members, ranging from $100 to $320. Plaintiffs and putative class members were told that they would be hired by JBS Greeley and provided housing if they paid the recruitment fees. However, when the first set of Haitian workers arrived in November 2023, JBS Greeley placed them in single-bed and bathroom motel rooms in groups of three to eleven people.

The rooms did not have cooking facilities, and many lacked adequate heat. Plaintiffs and putative class members were charged weekly fees for the crowded rooms. They were also charged a "commuting fee" to and from the meatpacking plant.

As new Haitian recruits joined, Ebah rented houses and moved the workers from the motel into the houses. The workers were expected to sleep on the floor with blankets. At times, there was no electricity or water. The recruits were charged weekly to stay in these houses, which sometimes housed up to 40 to 60 people. Plaintiffs contend JBS Greeley knew that it would be challenging for the Haitian recruits to secure other housing. Within a year, JBS Greeley added approximately 1,200 workers to its plant payroll. Plaintiffs allege JBS Greeley knew that it could not provide adequate housing for this many workers.

Finally, with respect to the work itself, Plaintiffs allege that the orientation they received was not provided in any language accessible to them. Given the lack of proper training, Plaintiffs contend they had an increased rate of injury, including injuries from the knives used to cut apart cattle, musculoskeletal injuries from performing difficult and repetitive motions, chemical injuries from the products they were directed to use for cleaning, amputations, severe burns, and lacerations. Plaintiffs also claim that JBS Greeley failed to provide its Haitian workers with information about their health and safety rights, making it impossible for them to access medical care and wage replacement.

JBS Greeley had a policy of accelerating the line speed to dangerous fast speeds for the line made up of majority Haitian workers, the "B-Shift" Line. The "A-Shift" line was made up of fewer Haitian workers and was slower. Plaintiffs allege the B-Shift line speed

led to higher risk of injury to Haitian workers compared to non-Haitian workers. They bring this lawsuit on behalf of themselves and three subclasses:

- "The Recruitment Class": "All Black Haitian workers recruited to work at JBS Greeley at any time after November 1, 2023";
- "The Discrimination Class": "All Black Haitian workers employed by JBS Greeley at any time after November 1, 2023"; and
- The "B-Shift Class": "All Black Haitian workers employed at JBS Greeley and assigned to work the B-Shift on the processing line at any time after November 1, 2023.

Plaintiffs allege several common issues across the various subclasses and bring the following claims:

- Claim 1: Pattern and Practice of Discriminatory Treatment Because of Race in violation of 42 U.S.C. § 1981(b);
- Claim 2: Obtaining Workmen by Misrepresentation in violation of Colo. Rev. Stat. § 8-2-104;
- Claim 3: On behalf of the "B-Shift Class," Pattern or Practice of Discriminatory Treatment Because of Race, Ethnicity, Color or National Origin in violation of Title VII;
- Claim 4: Colorado Wage Claim Act violation under Colo. Rev. Stat. §§ 8-4-101, *et seq.*;
- Claim 5: Colorado Minimum Wage Act violation under Colo. Rev. Stat. §§ 8-6-101, *et seq.*;
- Claim 6: Civil Theft violation under Colo. Rev. Stat. § 18-4-405; and
- Claim 7: Unjust Enrichment.

Defendants moved to dismiss all claims against JBS USA and Claims 2 and 4-7 in their entirety.

## II. LEGAL STANDARD

The Court is required to make a de novo determination of those portions of a magistrate judge's recommendation to which a specific, timely objection has been made, and it may accept, reject, or modify any or all of the magistrate judge's findings or recommendations. 28 U.S.C. § 636(b)(1) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."); Fed. R. Civ. P. 72(b)(3) ("The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to.").

"[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property*, 73 F.3d 1057, 1060 (10th Cir. 1996). In the absence of a proper objection, the district court may review a magistrate judge's recommendation under any standard it deems appropriate. *See Summers v. Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991) ("In the absence of timely objection, the district court may review a magistrate's report under any standard it deems appropriate."); *see also Thomas v. Arn*, 474 U.S. 140, 150 (1985) ("It does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings.").

## III. ANALYSIS

Magistrate Judge Neureiter recommends Defendants' Motion to Dismiss (ECF No. 39) be denied. Defendants object to the Recommendation, arguing that (1) Plaintiffs'

Claims 4-6 are based on unreimbursed "business expenses" and, thus, should be dismissed; and (2) Plaintiffs' claims under Colo. Rev. Stat. § 8-2-104 are preempted by federal law. ECF No. 71. The Court addresses each of these arguments below.

**A. Claims 4-6**

Plaintiffs' Claims 4 through 6 allege violations of the Colorado Wage Claim Act ("CWCA") (Claim 4), the Colorado Minimum Wage Act ("CMWA") (Claim 5), and Colorado's Civil Theft statute (Claim 6). In their Motion to Dismiss, Defendants allege that (1) Claims 4 and 5 fail under Fed. R. Civ. P. 12(b)(6), because CWCA "does not provide a cause of action to recover unreimbursed business expenses," ECF No. 39 at 21, and "Plaintiffs do not plausibly allege that failing to reimburse expenses reduced their compensation below the Colorado state minimum wage during any workweek," *id.* at 25; and (2) Claim 6 is entirely dependent on Claim 5 and, thus, similarly fails, *id.* at 28-29. Magistrate Judge Neureiter disagreed with Defendants and determined that Plaintiffs plausibly stated a claim under CWCA, CMWA, and Colorado's Civil Theft statute. ECF No. 66 at 31-39. Defendants object to the Recommendation's finding for "fail[ing] to address Defendants' arguments concerning travel costs and 'recruitments,' and incorrectly hold[ing] that Plaintiffs' alleged housing costs were reimbursable 'business expenses.'" ECF No. 71 at 2. Ultimately, Defendants' objection is based on their belief that, in order to plausibly state a violation of CWCA, CMWA, and Colorado's Civil Theft statute, Plaintiffs' alleged housing costs, travel costs, and recruitment fees must be reimbursable "business expenses." ECF No. 71 at 1-2. For the reasons stated below, the Court disagrees with Defendants.

Defendants argue that "whether housing costs are business expenses that must be paid by an employer is determined by ***the nature of the job***, specifically whether the need for housing is a feature of the work due to its remote or distant location, ***not an employee's individual financial circumstances, language ability, or resources***." *Id.* at 2 (emphases original). Defendants cite to the Colorado Division of Labor Standards and Statistics' Interpretive Notice and Formal Opinion #16 ("INFO #16") for the definition of "business expense" and determine that they "include, generally, items 'primarily for employer benefit' and 'items the employer requires.'" *Id.* at 3. Defendants claim that "[a]ll employees at the Greeley facility incur ordinary housing and living expenses" and that "[n]othing in INFO #16 supports Plaintiff's argument that their personal circumstances render housing costs 'business expenses.'" *Id.* at 3-4.

Defendants' arguments address the merits of Plaintiffs' claims rather than whether Plaintiffs have plausibly alleged their claims. At this stage, the Court need only determine whether Plaintiffs have alleged sufficient facts to plausibly state a claim. In order to do so, the Court "[g]enerally . . . may consider only the contents of a complaint when ruling on a motion to dismiss." *Cuervo v. Sorenson*, 112 F.4th 1307, 1312 (10th Cir. 2024). Thus, the Court focuses its analysis on the allegations in the First Amended Complaint, ECF No. 31, and applicable statutes.

Colo. Rev. Stat. § 8-4-105(1) states that "[a]n employer shall not make a deduction from the wages or compensation of an employee" and provides several exceptions, without mention of "business expenses." *303 Beauty Bar* provides further guidance, stating that "the Wage Act provides that employees must be paid their wages." *303 Beauty*

*Bar LLC v. Div. of Lab. Standards & Stat.*, 568 P.3d 43, 46 (Colo. App. Feb. 20, 2025). Permissible wage reductions, such as loans and advances enumerated in § 8-4-105(1)(b), "directly benefit employees, without an obvious benefit to employers." *Id.* Given this, the Colorado Court of Appeals concluded that permissible "deductions must also primarily benefit the employer" and "a contract that reduces those wages by shifting the employer's costs of doing business to the employee would 'contravene the legislature's manifest intent to prevent contractual waiver or modification of an employer's mandatory obligations' under the Wage Act." *Id.* at 46-47.

Here, Plaintiffs have alleged that "[t]he employer provided housing was an essential part of the recruitment scheme and necessary to do the job as there was no viable alternative non-employer housing within commuting distance of JBS and thus was primarily for the benefit of JBS." ECF No. 31 ¶ 113. Additionally, Plaintiffs claim that "[g]iven its history of recruiting immigrants, JBS knew that it would be significantly challenging for the Haitians, many or most of whom did not speak English, to secure housing by themselves" and, therefore, "made it a key part of the recruitment scheme, promising the Haitians they would be 'taken care of.'" *Id.* Plaintiffs contend they would not have traveled to Colorado without the promise of the job, and housing, provided by Defendants. *Id.* ¶¶ 50, 71-72. They further allege that they paid for domestic flights and recruitment fees to Remy in order to get to Colorado. *Id.* ¶¶ 75-80. They contend that Defendants knew of these fees required by Remy and that they primarily benefited Defendants. *Id.* ¶¶ 80-81.

In their objection, Defendants argue that each of these costs and fees were normal living expenses and, thus, deductible from Plaintiffs' wages under Colorado law. ECF No. 71 at 4-8. Defendants cite an out-of-circuit decision for the proposition that housing is a "normal living expense" and "is therefore not primarily for the benefit of the employer." *Arriaga v. Fla. Pac. Farms, L.L.C.*, 305 F.3d 1228, 1243 (11th Cir. 2002). Although it is not bound by this decision, the Court finds its analysis informative and weighs against Defendants' argument. In *Arriaga*, the Eleventh Circuit determined that "ordinary street clothing rather than a uniform" was a normal living expense not primarily for the benefit of the employer. *Id.* at 1244. However, the Eleventh Circuit conceded that certain "categories are more nuanced; the costs are primarily for the benefit of the employer or the employee depending on the specific facts." *Id.* at 1243. In other words, the Eleventh Circuit applies a similar fact-based, case-by-case approach as the Colorado Court of Appeals did in *303 Beauty Bar* in determining whether a cost was a deductible business expense. Defendants attempt to argue the housing, travel, and recruitment costs in the instant case are normal living costs that the Plaintiff employees should have absorbed. However, from the allegations provided in the First Amended Complaint, the category of costs at issue here are of a more "nuanced" category.

In this case, Plaintiffs' factual allegations demonstrate that the promised housing was not intended to only benefit Plaintiffs but also Defendants, because Plaintiffs would not have joined JBS Greeley's workforce without guaranteed housing. It is undisputed that Plaintiffs are Haitian refugees who do not speak English and that Defendants were seeking to increase their workforce. Further, Plaintiffs sufficiently allege that they were

required to pay domestic transportation and recruitment fees in order to physically be in Colorado to begin work. From Plaintiffs' allegations, the fees and costs associated with their travel to Colorado were part and parcel of Defendants' recruitment efforts. At this stage, these facts are sufficient to plausibly state a CWCA claim. Because Plaintiffs' CMWA and Civil Theft claims also rely on business-expense wage reductions, they have similarly plausibly stated their CMWA and Civil Theft claims. Therefore, Defendants' first objection related to Claims 4 through 6 is OVERRULED.

**B. Claim 2**

Plaintiffs' Claim 2 alleges that Defendants brought Plaintiffs into Colorado by means of false and deceptive representations, false advertising, and/or false pretenses in violation of Colo. Rev. Stat. § 8-2-104. ECF No. 31 ¶ 191. Magistrate Judge Neureiter explains that the statute is not limited to labor strikes or unrest but extends "to any false representations about compensation or conditions of employment used to lure workers to Colorado." ECF No. 66 at 36. Defendants object to the Recommendation, arguing that certain provisions of the Colorado statute are preempted by federal law. ECF No. 71 at 8. In particular, Defendants argue "the National Labor Relations Act preempts § 8-2-104's prohibition on any misrepresentation about 'the existence or nonexistence of a [pending] strike or lockout' and declaration that a 'failure to state in any advertisement, proposal, or contract for the employment that there is a strike, lockout, or other labor trouble' violates the statute." *Id.* at 8-9 (relying on *Lodge 76, Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO v. Wisconsin Employment Relations Comm'n*, 427 U.S. 132 (1976)).

Defendants' arguments miss the mark. Magistrate Judge Neureiter explained in the Recommendation that Defendants' preemption argument is unavailing, because it assumes Plaintiffs' claim is somehow in conflict with the National Labor Relations Act ("NLRA"). However, Defendants fail to explain how the Colorado statute conflicts with or is preempted by the NLRA. The plain language of Colo. Rev. Stat. § 8-2-104 makes it "unlawful for any . . . company . . . of any kind doing business in this state, by itself or its agents or attorneys, to induce, influence, persuade, or engage workmen to change from one place of employment to another in this state, or to <u>bring workmen of any class or calling into this state</u> to work in any of the departments of labor in this state, <u>through or by means of false or deceptive representations, false advertising, or false pretenses concerning the kind and character of the work to be done, or amount and character of the compensation to be paid for such work</u>." The statute does not regulate or impact the protected procedures of the NLRA, which provides employees "the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection." 29 U.S.C § 157.

Defendants contend the Colorado statute's "lockout and strike" provision is preempted by the NLRA and not severable from the rest of the statute. The Court is not persuaded. Defendants' objection fails to explain how the words "strike" and "lockout" in § 8-2-104 actually relate to any portion of the NLRA. The "strike" and "lockout" portion of § 8-2-104 merely prohibits a company from "fail[ing] to state in any advertisement, proposal, or contract for the employment that there is a strike, lockout, or other labor

trouble at the place of the proposed employment, when in fact such strike, lockout, or other labor trouble then actually exists at such place." Under a plain reading of the statute, the "lockout and strike" provision does not impact the employees the right to organize or engage in strikes or lockouts, as the NLRA does. Additionally, as Magistrate Judge Neureiter notes, courts in this District have found Colo. Rev. Stat. § 8-2-104 "expressly prohibits the inducement of relocation into the state for employment purposes based on false representations including, inter alia, work to be done or compensation to be paid." *Snyder v. Beam Techs., Inc.*, No. 20-CV-03255-NYW, 2021 WL 4947295, at *18 (D. Colo. Aug. 16, 2021). These are precisely the kind of false representation claims at issue in this case.

In their objection, Defendants analyze the purpose of § 8-2-104 (and surpass the permitted page limit of the objection) to explain that the statute was not intended to be severable. Whether severable or not, the Court does not find the "strike and lockout" provision of § 8-2-104 is preempted by the NLRA. Therefore, Defendants' second objection regarding Claim 2 is OVERRULED.

## IV. CONCLUSION

For the reasons set forth above, IT IS ORDERED that:

1. Defendants' Objection to the Recommendation, ECF No. 71, is OVERRULED;
2. The Recommendation, ECF No. 66, is ACCEPTED AND ADOPTED; and
3. Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6), ECF No. 39, is DENIED.

DATED: October 28, 2026

BY THE COURT:

________________________________________
REGINA M. RODRIGUEZ
Chief Judge, U.S. District Court